# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER ALVAREZ, | : | |
| | : | CIVIL ACTION NO. 3:18-0670 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| DAVID J. EBBERT, | : | |
| | : | |
| Defendants | : | |
| | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

On March 26, 2018, Petitioner Christopher Alvarez ("Alvarez"), a prisoner confined at the Lewisburg United States Penitentiary, Lewisburg, Pennsylvania, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Alvarez challenges the decision of a Discipline Hearing Officer ("DHO") who found him guilty of attempted drug introduction and criminal phone abuse. *Id.* Respondent filed a response to the petition on July 19, 2018 (Doc. 14), and Alvarez filed his traverse on October 4, 2018 (Doc. 16). Accordingly, this matter is ripe for disposition. For the reasons that follow, the petition will be denied.

### I.  BACKGROUND

Alvarez was issued Incident Report 2956556 on February 28, 2017, charging him with prohibited acts for violations of Codes 111A and 197 for attempted drug

introduction and criminal phone abuse at the United States Penitentiary in Atwater, California. (Doc. 14, Ex. 1, Declaration of Jennifer Knepper, Attach. C.) Specifically, Incident Report 2956556 sets forth that on December 13, 2016, Alvarez called a former inmate in San Luis, Mexico, whom Alvarez spent time with at the United States Penitentiary in Leavenworth, Kansas. *Id.* During the phone conversation, Alvarez asked the former inmate if he remembers when they used "box," which is a common street name for suboxone. *Id.* The Incident Report further provides that after the former inmate confirmed that he remembered, Alvarez stated he was going to need "100" suboxone strips. *Id.*

On December 20, 2016, Alvarez again called the former inmate, who informed Alvarez that the cost of the suboxone strips would be $12 each. *Id.* The Incident Report provides that Alvarez instructed the former inmate to get as many strips as he could and to provide an email so that Alvarez could pay him. *Id.* During the call, Alvarez also told the former inmate to "snatch-up" 50 so that he can link the former inmate with his Native American friend who was recently released. *Id.* That same day, Alvarez called his Native American friend and told him that he had some things lined up for him and was going to link him up with his friend in Mexico. *Id.* Alvarez further provided the Native American friend with the former inmate's phone number. *Id.* In an email to a third friend, Alvarez requested local Google voice numbers for each of the former inmates. *Id.*

In conducting a review of the phone number Alvarez used to contact the former inmate in Mexico, the BOP discovered the number was also being used by several other inmates within the BOP. *Id.* Special Investigative Service ("SIS") interviewed Alvarez and informed him that they were aware of his attempt to have Suboxone sent in the mail through former BOP inmates. *Id.* The Incident Report provides that while Alvarez stated that he did not know what they were referring to, Alvarez did not deny the allegation. *Id.*

Incident Report 2956556 was initially issued on February 28, 2017, but a re-write was ordered so that missing information in the report could be completed. *Id.* Once completed, a new incident report was issued and referred to the DHO. *Id.* Alvarez appeared before the Unit Discipline Committee on March 21, 2017, but, declined to provide any comment to the committee and refused to sign the forms "Inmate Rights at Discipline Hearing" and "Notice of Discipline Hearing before the (DHO)." *Id.*

An initial DHO hearing was held on March 10, 2017 and Alvarez's due process rights were reviewed. (Doc. 14, Ex. 1, Knepper Decl.; Attach. D.) At the hearing, Alvarez confirmed that he received a copy of the incident report and did not request any witnesses and had no documentary evidence. *Id.* The March 10, 2017 DHO hearing was postponed in order to review additional evidence and because the incident report was sent back for a re-write after review of the evidence. *Id.* Alvarez

received a copy of the re-written report on March 15, 2017, and the hearing resumed on March 31, 2017. *Id.*

At the hearing, the DHO considered documentary evidence including the SIS report, the record call list, email messages list, inmate names list and negative incident report history. *Id.* The DHO determined that Alvarez committed the prohibited acts as alleged based on the greater weight of the evidence. *Id.* The DHO's finding was based on the reporting officer's account and the SIS investigation, including email and telephone logs. *Id.* The DHO noted Alvarez's statements at both hearings, but ultimately found the other evidence to be more credible. *Id.*

The DHO sanctioned Alvarez to forty-one days lost good conduct time, thirty days disciplinary segregation, loss of commissary for six months and a one-year loss of visiting privileges for the Code 111A offense. *Id.* For the Code 197 offense, the DHO sanctioned the disallowance of forty-one days good conduct time, forfeiture of twenty days non-vested good conduct time, ten days disciplinary segregation, loss of phone privileges for one year and a monetary fine of $50.00. *Id.* The DHO issued her report on April 13, 2017 and a copy was provided to Alvarez on the same day. *Id.*

Alvarez appealed the DHO's findings via Administrative Remedy 900634-R1, with the result that the DHO was directed to reconsider the decision, augment

the record and expunge the Code 197 offense for criminal phone abuse. (Ex. 1, Knepper Decl.; Attach. E, Administrative Remedy Response.) On April 5, 2018, the DHO issued a re-written report noting that the Code 197 charge for the use of phone for illegal purposes was redacted as redundant to the Code 111A offense. (Ex. 1, Knepper Decl.; Attach F, Re-Written DHO Rep.) However, Alvarez had already filed the instant habeas petition on March 26, 2018.

## II. DISCUSSION

### A. Exhaustion Doctrine Bars Petitioner's Habeas Petition

Courts have consistently required a petitioner to exhaust administrative remedies prior to filing a 28 U.S.C. § 2241 petition. *See Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (holding "that a prisoner's procedural default of his administrative remedies bars judicial review of his habeas petition unless he can show cause for the default and prejudice attributable thereto"); *Arias v. United States Parole Comm'n.*, 648 F.2d 196, 199 (3d Cir. 1981) (concluding that, in the context of a habeas petition filed under § 2241, "the district court should have dismissed appellant's petition on exhaustion grounds"). Exhaustion of administrative remedies is required "for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters

administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)).

For a prisoner to exhaust his administrative remedies, he must comply with the BOP's Administrative Remedy Program, 28 C.F.R. § 542.10 et seq., otherwise, the habeas petition should be dismissed. *Arias*, 648 F.2d at 199 (requiring federal prisoner to exhaust administrative remedies before bringing claim under § 2241). To appeal a DHO decision, an inmate must complete a two-step administrative remedy program. 28 C.F.R. §§ 542.10-542.19. The first step requires the inmate to appeal with the Regional Director for the region where the inmate is currently located within 20 days of the DHO's decision. 28 C.F.R. § 542.15 (known as the BP-10 appeal). If the appeal is denied in step one, the second step requires the inmate to appeal to the Central Office within 30 days (known as the BP-11 appeal). No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. *See Sharpe v. Costello*, No. 08-1811, 2008 WL 2736782, at *3 (3d Cir. July 15, 2008).

The burden of showing exhaustion rests on the applicant in a habeas action. *O'Halloran v. Ryan*, 835 F.2d 506, 508 (3d Cir. 1987). Exhaustion is only excused where pursuit of administrative remedies would be futile, the agency's actions clearly and unambiguously violate statutory or constitutional rights, or the

administrative procedures would be inadequate to prevent irreparable harm. *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988).

Here, the record is clear. Alvarez appealed the DHO's findings via Administrative Remedy 900634-R1, with the result that the DHO was directed to reconsider the decision, augment the record and to expunge the Code 197 offense for criminal phone abuse. (Doc. 14, Ex. 1, Knepper Decl.; Attach. E, Administrative Remedy Response.) However, while the DHO's reconsideration of Incident Report 2956556 was pending, Alvarez filed his habeas petition on March 26, 2018. The DHO's reissued Report was not received by Alvarez until April 5, 2018. Accordingly, the record supports Respondent's argument that Alvarez prematurely filed the instant habeas petition, prior to properly exhausting his available administrative remedies. Consequently, as Alvarez never fully exhausted his administrative remedies prior to filing the instant habeas petition, the instant petition must be dismissed.

### B. Petitioner Received All Due Process To Which He Was Entitled

Even assuming, *arguendo*, that Alvarez did properly exhaust his administrative remedies, he received all the due process to which he was entitled. Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a

- 7 -

criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Since Alvarez's sanctions include the loss of good conduct time, he has identified a liberty interest.

In *Wolff,* the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445-46 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing

examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457. The *Hill* standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. *See Thompson v. Owens*, 899 F.2d 500, 501-502 (3d Cir. 1989).

The BOP's inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled, *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial review pursuant to § 541.7.

The UDC review/hearing is "ordinarily [held] within five work days after [the incident report] is issued" and does not include the initial day staff learns of the incident, weekends or holidays. <u>Id.</u> If the UDC finds that a prisoner has committed a prohibited act, it may impose any of the available sanctions set forth in 28 C.F.R. § 541.3 (Tables 1 and 2) except loss of good conduct time, disciplinary segregation, or monetary fine. *Id.* If the alleged violation is serious and warrants consideration

for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing. *Id.*

A DHO "will only conduct a hearing on the incident report if referred by the UDC." 28 C.F.R. § 541.8. An inmate will receive written notice of the charges 24 hours before the DHO hearing unless the inmate waives the notice requirement in which case the DHO can conduct the hearing sooner. *Id.* The inmate is permitted to have a staff representative at the hearing and entitled to make a statement and present documentary evidence. *Id.* After the hearing, the DHO will either: (1) find the inmate committed the prohibited act or similar one described in the incident report; (2) find the inmate did not commit the prohibited act charged; or (3) refer the incident report back for further investigation, review and disposition. *Id.* If an inmate is found to have committed a prohibited act, the DHO can impose any of the available sanctions listed in Table 1 and 2 of § 541.3. *Id.* Finally, the written report or decision of the DHO will contain the following: (1) whether the inmate was advised of his or her rights during the proceedings; (2) the evidence relied on by the DHO; (3) the DHO's finding of guilt or innocence; (4) the sanctions imposed; and (5) the reasons for the sanctions imposed. *Id.*

It is clear that Alvarez was afforded his procedural due process rights under *Wolff* and the BOP regulations. Alvarez's hearing before the DHO was initially held on March 10, 2017, after having received a copy of the incident report on February

28, 2017. (Ex. 1, Attach F.) Alvarez appeared again before the DHO on March 31, 2017, after having received the re-issued incident report. *Id.* Alvarez's requested staff representative appeared on his behalf and Alvarez testified on both March 10 and March 31, 2017. *Id.* He did not request any witnesses or submit any documentary evidence. *Id.* The DHO's original April 13, 2017 report explained the evidence she relied upon and included the rationale behind her decisions and disciplinary action. *Id.* Alvarez was provided a copy of the report that same day. (Ex. 1, Attach. D.) Similarly, Alvarez received the April 5, 2018, re-written DHO report that same day, which expunged the Code 197 offense as redundant. Accordingly, the Court finds that Alvarez received all due process procedures to which he was entitled.

It is also clear from the record that there was some evidence to support the DHO's decision. In ascertaining the "some evidence" standard, this Court need only determine whether there is any evidence in the record that could support the conclusion reached by the DHO. *See Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). Specifically, the DHO based her findings on the written account of the reporting officer, the SIS report which was supported by the recorded call list, email messages list, inmate names list, and Alvarez's negative incident report history. There is, therefore, "some evidence" in the record that supports the conclusions reached by the DHO and therefore, Alvarez was not denied due process.

### C. Alvarez's SMU Challenge

The purpose of a petition for writ of habeas corpus is to allow a person in custody to challenge either the fact or duration of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002). Federal habeas relief is unavailable unless the petition attacks "the validity of the continued conviction or the fact or length of the sentence." *Leamer*, 288 F.3d at 542. For instance, under § 2241, a federal prisoner may challenge the execution of his sentence – such as a claim concerning the denial or revocation of parole, or the loss of good-time credits – in the district court for the federal judicial district where the prisoner is in custody. *See* 28 U.S.C. § 2241(a); *Rumsfeld v. Padilla*, 542 U.S. 426, 443-44 (2004); *Coady v. Vaughn*, 251 F.3d 480, 485 (3d Cir. 2001).

In contrast, where a "judgment in Petitioner's favor would not affect the fact or duration of Petitioner's incarceration, habeas relief is unavailable." *See Green v. Bledsoe*, No. 4:10-cv-0059, 2010 WL 1372409, at *1 (M.D. Pa. Apr. 5, 2010) (quoting *Suggs v. B.O.P.*, Civ. No. 08-3613, 2008 WL 2966740, at *4 (D. N.J. July 31, 2008)). Rather, "when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate." *Leamer*, 288 F.3d at 542. Where a federal

inmate is challenging the conditions of his confinement, the filing of a *Bivens*[1] action under 28 U.S.C. § 1331, the federal counterpart to a § 1983 action, is appropriate. Here, to the extent that Alvarez challenges his placement in the SMU, this claim does not constitute a challenge to the fact or duration of his confinement, as any favorable decision would not alter his sentence or undo his conviction. *See Cardona v. Thompson*, 551 F. App'x 630, 632 (3d Cir. 2013) (finding that a favorable resolution in such issues "would mean at most release into the general population; it would not mean a shorter stay in prison). Rather, Alvarez's challenge concerns the conditions of his confinement, which do not sound in habeas. *See Dodd v. Smith*, No. 3:cv-05-1802, 2005 WL 2234642, at *1 (M.D. Pa. Sept. 14, 2005) (finding that inmate's challenge to the sanctions imposed in a disciplinary proceeding which did not result in the forfeiture of good time credits and did not extend the length of inmate's incarceration, was not a proper habeas claim); *Bedenfield v. Lewisburg*, Civ. No. 10-1750, 2010 WL 3511507, at *1 (3d Cir. Sept. 9, 210) ("Bedenfield's challenge to his placement in the SMU is analogous to the 'garden variety prison transfer' that we have indicated should be challenged in a civil rights action, not via a habeas petition"); *Green*, 2010 WL 1372409, at *2 (dismissing petitioner's § 2241 habeas petition challenging SMU placement as not cognizable under § 2241);

---

[1] *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

*Woodruff v. Williamson*, No. 3:06-cv-2310, 2009 WL 703200, at *5 (M.D. Pa. Mar. 12, 2009) (same).

Accordingly, Alvarez's challenge to his SMU designation will be dismissed without prejudice to his right to pursue this claim in a properly filed civil rights action.[2]  An appropriate Order will issue.

**BY THE COURT:**


<u>**s/James M. Munley**</u>
**JUDGE JAMES M. MUNLEY**
**United States District Judge**

---

[2] The Court expresses no opinion as to the merits, if any, of any civil rights claim Alvarez may file based upon the facts asserted in the instant petition.